## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) | JOHN DOE, | § |
| | | § |
| | Plaintiff, | § |
| | | § |
| | v. | § Case No: CIV-23-473-R |
| | | § |
| 1) | INDEPENDENT SCHOOL DISTRICT NO. 93 OF POTTAWATOMIE COUNTY, OKLAHOMA, a/k/a SHAWNEE SCHOOL DISTRICT, a/k/a SHAWNEE PUBLIC SCHOOLS; and, | § § § § § Attorney's Lien Claimed § § Jury Trial Demanded § |
| | | § |
| 2) | RONALD GENE ARTHUR, an individual, | § § § |
| | Defendants | § |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, John Doe, by and through his attorney of record, Cameron Spradling of Cameron Spradling, PLLC, and based on information and belief, alleges and states as follows:

### I.    THE PARTIES

1.    At all relevant times, Plaintiff was a citizen of the State of Oklahoma and a resident of Pottawatomie County, Oklahoma. Plaintiff was required to attend school per Oklahoma Statute 70 O.S. § 10-105.

2.    Defendant Independent School District No. 93 of Pottawatomie County, *a/k/a* Shawnee School District, *a/k/a* Shawnee Public Schools ("Shawnee School District"

or the "District") is a public educational institution located in Pottawatomie County, Oklahoma. The District is an Oklahoma school district organized and existing under the laws of the State of Oklahoma and has its principal office in Pottawatomie County, Oklahoma. The District receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 - 1688. The District may be served with process at its principal place of business: April Stobbe, Clerk of the Board of Education of Independent School District No. 93 of Pottawatomie County, 326 N. Union Avenue, Shawnee, OK 74801.

3.      At all relevant times, Defendant Ronald Gene Arthur ("Arthur") was an employee of the Shawnee School District.

4.      At all relevant times, Defendant Arthur was acting within the course and scope of his employment, except as to those claims that are intentional torts.

5.      At all relevant times, Arthur was a citizen of the State of Oklahoma and a resident of Pottawatomie County, Oklahoma.

## II.      JURISDICTION & VENUE

6.      This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

7.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the

Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

8.    Pursuant to 28 U.S.C. § 1367, this Court also has subject matter jurisdiction over pendent state law claims regarding the violation of the Oklahoma Constitution, state statutes, and common law torts.

9.    Venue is proper in this district, as the Defendants do business in this district, the events giving rise to the claims occurred (at least in part) in this district, and the Defendants reside and/or have their principal place of business in this district.

### III.    COMPLIANCE WITH O.G.T.C.A. NOTICE REQUIREMENT

10.    Plaintiff has complied with the notice provisions of the Oklahoma Governmental Tort Claims Act by providing timely notice of this claim to the District.

### IV.    FACTUAL BACKGROUND

11.    The Shawnee School District should provide a safe learning environment for its students. It failed to do so.

12.    The Shawnee School District failed to provide its students an environment free of sexual predators. While on school grounds, during school hours, after school hours and even after a student's graduation; a sexual predator repeatedly preyed on students even after Shawnee School District was notified of the sexual predator's misconduct.

13.    Defendant Arthur was employed by the District from 2006 through 2021, holding various positions as teacher, coach and assistant athletic director.

14.     Reports of sexual misconduct, sexual harassment and sexual assault committed by Defendant Arthur against male students were brought to the District's attention beginning in 2007, over fifteen (15) years ago, by at least one former male student.

15.     Beginning in January 2007, Arthur began inappropriately touching a male student athlete, R.H., and making inappropriate sexual comments to him. On more than one occasion, Arthur would grab one of R.H.'s hand, tell him that his skin was so soft, and ask if that was the hand that R.H. would masturbate. Arthur would suggest porn sites to R.H. Another time when the basketball team had a party at the mayor's home, Arthur suggested to R.H. that they go upstairs and find a room.

16.     Arthur's inappropriate sexual comments to R.H. were sexual harassment.

17.     R.H. suddenly wanted to quit basketball, a sport that he loved, and change schools, when he was extremely well-liked by his peers and teachers at Shawnee High School ("SHS").

18.     R.H.'s parents became concerned about their son's sudden behavior change. When questioned, R.H. told his parents only some of the inappropriate behavior that Arthur was directing to him at school. They immediately reported to the Athletic Director, who sent them to *then*-Superintendent Marilyn Bradford.

19.     What R.H.'s parents did not know at that time was that on at least three occasions, Arthur had grabbed and fondled R.H.'s testicles while they were alone in the coach's office. R.H. was only 14 years old. R.H. was afraid on each occasion and did not know what to do. [Arthur later admitted to playfully doing a "nut check" on R.H.]

20.     Arthur's inappropriate touching of R.H.'s genitals was sexual assault.

21.     On March 30, 2007, the District received allegations related to inappropriate statements made to and/or in the presence of students by Arthur and inappropriate touching of a student by Arthur in an area and manner that was improper and offensive to the student.

22.     On April 2, 2007, the District served Arthur with a Notice of Suspension while the allegations were investigated.

23.     On April 9, 2007, after the District's investigations proved the allegations to be true, Arthur received his 1st Admonishment Letter containing five Directives for Improvement. Below are Directives 1-3 with specific examples of Arthur's behavior that the District discovered during their investigations:

- You have been instructed that there should be no further incidents involving statements or conduct by you involving the touching of your students in a manner that makes them uncomfortable. *For instance, you will avoid running your hand up their arms or backs and will also avoid touching their genitals. The fact that a student may be clothed when you touch them does not excuse an inappropriate touch.*

- Communications with students will be professional. While I easily understand that athletics opens itself to a somewhat different type of disclosure then what may be found in a classroom, the behavior in which you engaged is not justified by the more open exchanges that may occur in an after school or highly competitive setting. *For instance, there is no excuse for calling a student on his cell phone and beginning your conversations by asking whether he is watching a porn movie and there*

> *is no excuse for making sexually explicit comments in the presence of students.*
>
> - Statements made in your capacity as a representative of the school district whether made during class time, extracurricular activities, or other encounters and whether made to students, parents, peers, or others reflect your position. *For instance, your statement, in the halls at SHS regarding the gym dressing room design, to a board member and his wife alluding to broom sticks and students was thoughtless and crude.*

24.     The District acknowledged that young men look up to their coaches and frequently model themselves after coaches that they admire. Concern was expressed that these young boys may replicate Arthur's inappropriate behaviors in their future; that Arthur's behavior was disturbing; and that Arthur was a poor example for these young men and others that have already left his program.

25.     The District warned Arthur that inappropriate statements and inappropriate touching will not be tolerated; that his behavior was an abuse of authority; and that any further inappropriate behavior will be grounds for possible dismissal.

26.     The District never reported the sexual assault and sexual harassment of R.H. by Arthur to law enforcement, but R.H.'s parents did at the direction of R.H.'s counselor.

27.     Retired Detective Anthony Grasso with the Shawnee Police Department. found enough evidence to substantiate charges being filed against Arthur for child endangerment, lewd acts with a minor under 16; however, the district attorney at that time declined to file charges against Arthur.

28.     On November 26, 2007, the District served Arthur with a 2nd Admonishment Letter after discovering that he had been alone with R.H. in his office, instructing Arthur to never meet with an individual player without an assistant coach, building administrator or athletic director present. Basically, Arthur was to never be alone with a student or students.

29.     Similar to the April 9, 2007 warning, the District again informed Arthur that further misconduct will result in possible dismissal.

30.     Arthur continued to sexually intimidate R.H. through the following year and R.H. did eventually move schools. When R.H. wanted to return to SHS the following year to be with his friends, Superintendent Bradford was not helpful and attempted to not allow it.

31.     The following year, on November 17, 2008, the District issued a "Complaint and Reprimand" to Arthur for disregarding previous directives and instructing or inferring to players that they are to keep what happens within the team between them and that they are not to report incidents, talk or report matters to peers, teachers, administrators, parents, or others. Arthur was notified that his behavior was inappropriate and for it not to continue. The Complaint and Reprimand recognized the District's two previous warnings to Arthur.

32.     After (2) Admonishments and (1) Complaint and Reprimand – all related to sexual assault, sexual harassment and inappropriate conduct with students - within his first two years of employment, Arthur remained employed by the Shawnee School District.

33.     On August 24, 2015, Arthur received a 3rd Admonishment Letter from the District for sending inappropriate text messages to a student in violation of his previous directives and board policy.

34.     After (3) Admonishments and (1) Complaint and Reprimand – all related to sexual assault, sexual harassment and inappropriate conduct with students - Arthur remained employed by the Shawnee School District.

35.     On March 3, 2018, R.H.'s mother, still a concerned citizen, wrote a lengthy letter to the District detailing the sexual assault and sexual harassment her son experienced by Arthur as early as 2007 and how it affected him then as a child. She expressed concern about Arthur continuing to have relationships with students and athletes outside of the classroom and gym and offered to share more of her son's past experiences to protect future students from Arthur and provided her contact information.

36.     Only a few weeks later, on March 14, 2018, a concerned parent and Shawnee Public Schools Board of Education member wrote a letter to the District requesting an investigation be conducted into the actions and behavior of Ron Arthur, who was now the Assistant Athletic Director. This parent/board member expressed concerns about the relationships that Arthur developed with particular students, his grooming patterns, and his inappropriate conduct towards her son and other athletes.

37.     In response, the District conducted an investigation and 42 days later, on April 25, 2018, the District put Arthur on a 10-day paid Suspension for continuing to engage in physical acts with students; continuing to use obscenities and sexual innuendos

with students; continuing to be alone with students behind closed doors of his office; and transporting students without parental permission.

38.     After (3) Admonishments, (1) Complaint and Reprimand, (2) Suspensions, and (2) complaints - all related to sexual assault, sexual harassment and inappropriate conduct with students - Arthur remained employed by the Shawnee School District.

39.    The day of Arthur's 2018 reinstatement, two teachers – Teacher "A" and Teacher "B" - both saw Arthur alone with a male student in his office and knew that was a direct violation of Arthur's reinstatement. Teacher "B" had extra reason for concern because he had heard the rumors about Arthur and male students. Teacher "B" reported Arthur's reinstatement violations to administrator, Joey Slate. Nothing was done.  Arthur remained employed by the Shawnee School District and the student moved schools.

40.     On April 30, 2020, Arthur received his 4th Admonishment Letter from the District addressing Arthur's repeated pattern of "professional judgment concerns", specifically related to student communications. Arthur admitted to sending a text message to a basketball player stating, "Where is my goodnight text?"  Arthur was specifically instructed to refrain from engaging in private electronic communications with students/players or his employment would be terminated.

41.     After (4) Admonishments, (1) Complaint and Reprimand, (2) Suspensions, and (2) complaints - all related to sexual assault, sexual harassment and inappropriate conduct with students - Arthur remained employed by the Shawnee School District.

42.     Arthur resigned as the boys' head basketball coach in the summer of 2020, after 16 years, and focused on his duties as the Assistant Athletic Director.

43.     During the following 2020-2021 school year**,** John Doe was a senior at Shawnee High School ("SHS") and a member of the SHS varsity wrestling team.

44.     After graduation on May 17, 2021, the SHS wrestling team, including John Doe, continued to attend wrestling practice at the SHS facilities in preparation for various wrestling tournaments that the team traveled to through July 24, 2021.

45.     The "Shawnee Wrestling Freestyle/Greco 2021 Schedule" identified five tournaments in April; two tournaments in May; five tournaments in June; and one in July. The SHS wrestling coaches required the SHS wrestlers to practice on Tuesdays, Thursdays, and Fridays at the SHS wrestling facilities.

46.     The "Shawnee Wrestling Organization", also known as the "Shawnee Wrestling Booster Club", raised money and provided funding for the 2021 wrestling tournaments.

47.     The "Shawnee Wrestling Organization" is sanctioned by the Shawnee Public School Board of Education. The organization is required to submit an "Application for Sanctioning of Parent Organizations and Booster Clubs" [SPS District Form CD-F] to the Superintendent annually for approval, with copies of the organizations by-laws and/or constitution, surety bond, and previous and current budget attached.

48.     On May 19, 2021, two days after graduation, Arthur communicated via Instant Messenger with another male asking him for John Doe's phone number and commenting that he needed a massage.

49.     On May 27, 2021, Arthur began texting with John Doe through the Grindr app under the account name: "Olderforyounger".  John Doe was under the influence of

marijuana and agreed to meet up with Arthur. Arthur picked John Doe up from his residence, drove him to a dead-end street, where Arthur proceeded to engage Doe in sexual activity, and then Arthur returned Doe home.

50.     On June 3, 2021, Arthur sent an instant message to John Doe asking if this was his number.

51.     On June 4, 2021 – June 5, 2021, the SHS wrestling team competed in the Southern Plains Regional wrestling tournament in Mulvane, Kansas. The SHS wrestling coaches were in attendance and a SPS bus was used to transport most of them.  John Doe placed 3rd overall in the Greco session on June 5, 2021.

52.     On June 16, 2021, Arthur reached out to a SHS teacher, Teacher "A", asking for John Doe's phone number.

53.     On June 16, 2021, at approximately 11:39 p.m. Arthur sent another instant message to John Doe saying, "Hello".

54.     On July 22, 2021, Arthur again began communicating with John Doe through the Grindr app. John Doe was under the influence of marijuana and agreed to meet up with Arthur. Arthur picked John Doe up from his house, drove him to a dead-end road, exchanged oral sex and returned John Doe home.

55.     On July 23, 2021, John Doe confided in his mother what had happened between him and Arthur on May 27, 2021, and the previous night, July 24, 2021. John Doe's mother made a report to law enforcement the next day.

56.     On July 24, 2021, the Pottawatomie County Sheriff's Office began an investigation into Arthur and on August 16, 2021, Arthur was taken into custody by the Pottawatomie Sheriff's Office.

57.     When questioned by law enforcement, Arthur admitted to the following:

- that he chatted with John Doe via the Grindr app when John Doe was a minor;

- that he knew John Doe as a student from SHS;

- that he believed that John Doe was no longer a student at SHS when they met up on May 27, 2021; and

- that John Doe competed in a wrestling tournament representing SHS the weekend of June 4, 2021

- that he often purchased items for students;

- that he often gave students money; and

- that he would take them to events outside of school to games or non-school related activities.

58.     Arthur also admitted to law enforcement that he had taken a former SHS male student, Student "V", a recent graduate, to his residence on July 22, 2021, and had sex with him.  Arthur told law enforcement they had met on the Grindr app and had sex one time prior to July 22, 2021.

59.     After Arthur's arrest became public, several victims came forward and were interviewed by law enforcement.

60.     Former SHS male student, Victim J.L., told officers that in 2006, before his senior year at SHS, a male reached out to him on the Yahoo dating app and they began chatting. The male told J.L. that he had seen him around Shawnee schools. After school started, Arthur pulled him aside and identified himself as the person sending him messages.

61.     Victim J.L. told law enforcement that Arthur was the senior class sponsor and threatened him that he would not graduate if he refused to "do things". When he was still a student at SHS, Victim J.L. was at Arthur's residence. Arthur removed J.L.'s clothing and performed oral sex on him. Victim J.L. said he didn't want to "do things" with Arthur, but he was fearful, and Arthur used his position of power over him. Victim J.L. told law enforcement that this occurred 4-5 times during his senior year and that Arthur constantly texted him.

62.     Victim J.L. never told his parents what had happened, but he did disclose the relationship he had with Arthur with a SHS teacher named "Donna", but she did nothing in response. Victim J.L.'s last contact with Arthur was in January 2018.

63.     Another former SHS male student, Victim S.H, told law enforcement that Arthur revealed sexual intentions with him when he was a student at SHS and Arthur would ask him to come over.

64.     Victim S.H. told officers that in 2011, when he was 18 years old and either still a student or a recent graduate, that he was at Arthur's residence; provided alcohol and possibly drugged; and raped by Arthur. Victim S.H. said he was scared and told Arthur, "No", but felt like he couldn't stop it because of Arthur's power of authority over him.

Victim S.H. related it to a coach telling you to do push-ups - you just do them because a coach said to.

65.     Victim S.H. also told law enforcement that Arthur had recently reached out to him, asking him to find out if a current male student at SHS was gay and provided him his name. Upon information and belief, that male student whom Arthur was questioning sexuality of was Arthur's current male student aide at SHS.

66.     Several SHS teachers were also questioned by law enforcement during their investigation.

67.     Teacher "A" said that John Doe had begun "acting weird" in May 2021. Teacher "A" also told officers that Arthur favored certain students and would buy things for them.

68.     Teacher "B" told officers that they noticed a behavior change in John Doe beginning in February 2021, and described him as "upset all the time" and "pissy".

69.     Teacher "C" told law enforcement that she had reported to administration that Arthur had taken a certain male student, Student "W", under his wing; bought him a cell phone; transported Student "W" to school in the mornings; and promised to take him to the Bahamas after graduation.

70.     Former SHS students were also questioned by law enforcement.

71.     A former SHS student, Student "X", told law enforcement that in either 2017 or 2018 he was in the locker room getting ready to leave for a tournament when Arthur came in and rubbed lotion on his back after he had gotten out of the shower.  Student "X" also told law enforcement that Arthur often took in kids from broken homes or those with

divorced parents; that Arthur had also purchased a cell phone for another male student Student "Y"; and that Arthur gave money and rides to and from home and games to Student "Y".

72.     A recent graduate of SHS, Student "Z", told officers that at some time in mid-2021, he had seen Arthur at iHop with another student and knew that Arthur was not to be alone with students. Student "Z" also said that the basketball players felt weird around Arthur.

73.     On August 2, 2021, Arthur received 9-day suspension from Superintendent April Grace because of a pending investigation at the Pottawatomie County Sheriff's Office regarding inappropriate conduct with John Doe.

74.     Assistant Superintendent Wilkerson notified John Doe that a Title IX investigation had been opened for Arthur's inappropriate sexual advances to him while he was a student at SHS.

75.     On August 11, 2021, Judge Mueller signed a Probable Cause Affidavit (CPC-2021-10) for Arthur for Forcible Sodomy, Lewd or Indecent Proposals to Child, Sexual Abuse of a Child and Soliciting Conduct or Communications with Minor by Use of Technology.

76.     On September 17, 2021, the Shawnee School District allowed Arthur to resign rather than terminate his employment.

77.     The District's administration and board members all received notice of those reports.

78.    The District ignored those reports of sexual misconduct, sexual harassment and sexual assaults committed by Defendant Arthur – year after year after year - and negligently retained him as an employee of the District.

79.    As a result of the District's negligence and deliberate indifference, Plaintiff became another victim of Defendant Arthur's sexual misconduct while a student attending Shawnee High School in 2021.

80.    Defendant Arthur repeatedly preyed on Plaintiff, even after the District had been informed of the sexual predator's previous misconduct via the District's agents, servants and employees, as well as members of the public.

81.    The Shawnee School District failed to implement and/or execute policies in regard to the reporting of sexual misconduct to state agencies to protect students from further abuse and to end the access to students of suspected predators. These failures resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

82.    The Shawnee School District failed to ensure that all of its employees, including administrators, were properly hired, trained, retained, and supervised to perform their jobs.

83.    At all relevant times described, April Grace was acting in the course and scope of her employment as the Shawnee School District Superintendent, including when she interacted with student-victims, faculty, and/or parents.

84.    The Shawnee School District is responsible for the acts and omissions of Superintendent April Grace—and any other school district employees who had knowledge of Arthur's activities—as described herein.

85.    The Shawnee School District is responsible for the acts and omissions of its Shawnee Public Schools Board of Education members —and any other policymakers who had knowledge of Arthur's activities—as described herein.

86.    The Shawnee School District is responsible for the acts and omissions of its school attorneys — who had knowledge of Arthur's activities—as described herein.

87.    The Shawnee School District is also responsible for the acts and omissions of Arthur with respect to his failure, as a District employee, to properly train school employees and implement and/or execute policies regarding the investigating and reporting of sexual misconduct.

88.    The District should provide a safe learning environment for its students and should provide an environment free of sexual predators.

89.    The District failed to do so.

90.    Plaintiff was physically, mentally, and emotionally injured by Arthur's misconduct and the Shawnee School District's failure to adequately respond to Arthur's behavior.

## V.    CAUSES OF ACTION

### Count 1 – Violations of 42 U.S.C. § 1983
### (Against Shawnee School District)

91.    Under the Fifth and Fourteenth Amendments, Plaintiff has the right to Due Process and Equal Protection of the Law.

92.    At all times relevant hereto, it was clearly established that Plaintiff had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

93.     At all times relevant hereto, Defendant Shawnee School District was a state actor acting under the color of state law.

94.     Defendant denied Plaintiff his rights to Due Process and Equal Protection of the Law by:

a.     enacting inadequate policies, specifically regarding the reporting of suspected sexual misconduct to law enforcement;

b.     failing to enact and implement adequate policies concerning sexual abuse of students by adults on campus;

c.     failing to remove suspected sexual predators from campus;

d.     failing to remove students from classrooms or offices occupied by suspected sexual predators;

e.     failing to investigate Arthur properly before and after these referenced allegations;

f.     failing to train and supervise Arthur properly;

g.     failing to hire, train, and supervise Superintendent April Grace, previous Superintendents, and other teachers and/or administrators properly;

h.     failing to report sexual misconduct to law enforcement;

i.     failing to report sexual misconduct to parents of victims;

j.     failing to investigate Arthur's misconduct;

k.     continuing to employ Arthur's and allow him unfettered, unsupervised interaction with students;

l.   utilizing its school attorneys as a shield and a cover-up;

m.   failing to adequately train and supervise the Shawnee School District's staff and employees; and

n.   exhibiting deliberate indifference to the sexual misconduct directed at Plaintiff and others like him.

95.   Shawnee School District has an unconstitutional custom or policy of:

a.   failing to properly investigate criminal misconduct against students;

b.   failing to report criminal misconduct against students;

c.   discounting the credibility of students' allegations;

d.   failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of students; and

e.   failing to enact policies that require adherence to reporting requirements.

96.   Shawnee School District's custom or policy was demonstrated by the fact that Defendant District received multiple allegations of misconduct regarding Arthur, yet failed to investigate those allegations or report them to law enforcement and removed Arthur only after criminal charges were filed against Arthur.

97.   Shawnee School District's policy is attributable to municipal policymakers including, but not limited to, Superintendent April Grace and the Shawnee Public School's Board of Education.

98.     The inadequate policies and resulting failures to train allowed Arthur, as a Shawnee School District employee, to violate Plaintiff's constitutional rights to equal protection and due process.

99.     Further, Defendant District affirmatively acted to create, or increased the Plaintiff's exposure and/or vulnerability to, or danger from, Arthur's misconduct.

100.    Molestation of students at a high school, during school sponsored activities, and after they have graduated from school is a danger to those students.

101.    A school environment where children are feloniously touched and/or receive lewd or lascivious communications from adults is a dangerous environment.

102.    The Shawnee School District became a dangerous environment for its students, including Plaintiff, even after he graduated.

103.    Trips and activities sponsored by and under the supervision and control of the Shawnee School District were dangerous environments for its students, including Plaintiff, even after he graduated.

104.    Plaintiff was a member of a limited and specifically definable group—namely, male, minor students.

105.    Shawnee School District created the danger or increased Plaintiff's vulnerability to the danger by effectively ignoring numerous allegations of sexual misconduct by Arthur; not immediately removing Arhtur from campus after receiving notice of his misconduct; continuing to allow Arthur unfettered and unsupervised access to students in his office and unfettered access to the records and phone numbers of these students; not effectively investigating allegations of misconduct by Arhtur; and/or not

immediately reporting the allegations of misconduct to law enforcement and/or the students' parents.

106.   Shawnee School District's conduct put Plaintiff and others like him at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being abused while at the Shawnee High School and after those students graduated from the Shawnee School District. Indeed, Plaintiff and other students were abused by Arthur *after* the Shawnee School District had notice of Arthur's misconduct.

107.   The risk of danger was obvious or known to the Shawnee School District, including due to disclosure of Arthur's misconduct to Superintendent April Grace and the Shawnee Public Schools Board of Education.

108.   Shawnee School District's actions and inactions created an opportunity for Arthur to continue to abuse Plaintiff and other students, as those actions stripped necessary aid from Plaintiff and others. Reporting Arthur's misconduct to law enforcement and/or victims' parents could have enabled law enforcement, regulatory bodies, or parents to have sheltered Plaintiff and other students from Arthur's predatory behavior, including by removing Arthur from Shawnee School District, and preventing Arthur from further access to Shawnee students including Plaintiff.

109.   Shawnee School District acted recklessly in conscious disregard of this risk.

110.   Shawnee School District's conduct shocks the conscience.

111.   Shawnee School District's and its officials' failings as described above resulted in Plaintiff, and other students and former students, suffering severe emotional distress, psychological damage, significant pain and suffering, and/or personal humiliation.

**Count 2 – Negligence**
**(Against Shawnee School District)**

112.   The District is responsible for the negligence of their agents, servants, and employees, including its school attorneys, while acting within the course and scope of their employment.

113.   Defendant District breached its duty of reasonable care as custodian of Plaintiff by, *inter alia:*

a.   Negligently retaining Arthur as an employee of the District after reports of sexual misconduct, sexual harassment and sexual assault were made by at least one former male student;

b.   Negligently allowing Arthur access to students after previous reports of sexual misconduct, sexual harassment and sexual assault were made by other male students;

c.   Negligently allowing Arthur access to students records, including student phone numbers from which Arthur may choose his victims even after graduation;

d.   Negligently supervising Arthur after previous reports of sexual misconduct, sexual harassment and sexual assaults were made by other male students;

e.   Negligently developing and/or implementing, or failing to develop and/or implement, policies and procedures designed to protect students from sexual harassment, sexual misconduct and sexual assault;

f.  Negligently training its employees and/or agents with regard to policies and procedures related to sexual harassment, sexual misconduct and sexual assault; and

g.  Failing to protect Plaintiff and other male students from harm while in the District's control or control of its agents and/or employees.

114.  The District had a duty to police the misconduct of its personnel under its immediate control and to protect the students from violations of the students' constitutional rights to bodily integrity and to be free from intrusions while attending a publicly mandated course of education.

115.  To the extent that the District had any procedures and policies for training, supervising and educating its employees in the detection, reporting and/or investigation of alleged or suspected incidents of offensive acts and acts of sexual misconduct in place, those procedures and policies were inadequate and likely to result in the violation of a student's constitutional rights.

116.  The District failed to take sufficient remedial action to correct, eliminate and/or prevent the recurrence of the offensive and unconstitutional acts described above once its employees perceived, knew or had reason to believe that Defendant Arthur posed a risk of sexual harassment, sexual misconduct and sexual assault.

117.  The conduct by school officials was done within the scope of their employment and course of their performance of their official responsibilities at the School District, under the color of laws, statutes, ordinances, regulations, practices, customs and

usage of the State of Oklahoma and the District and utilized the respect and authority granted to them by state and local law.

118.   The District was negligent in providing a safe and secure environment for its male students and was negligent in its dealings with school employees and, as a direct result of the negligence, Plaintiff was injured, both physically and mentally and has suffered damages.

**Count 3 – Negligence Per Se**
**(Against Shawnee School District)**

119.   The District and its employees and/or agents had a duty to report allegations of Arthur's sexual misconduct to the Oklahoma Department of Human Services ("DHS"). *See* 10A O.S. § 1-2-101(B)(1).

120.   That subsection requires "[e]very person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services."

121.   The Oklahoma Legislature promulgated the reporting requirements to prevent the type of injuries inflicted upon Plaintiff.

122.   The Oklahoma Legislature stated this legislative purpose in 10A § 1-1-102(A)(3): "Because the state has an interest in its present and future citizens as well as a duty to protect those who, because of age, are unable to protect themselves, it is the policy of this state to provide for the protection of children who have been abused or neglected and who may be further threatened by the conduct of persons responsible for the health, safety, and welfare of such children."

123.    Oklahoma's child abuse reporting laws express the State's strong public interest in protecting children from abuse by the policy of mandatory reporting of actual and suspected child abuse or neglect to appropriate authorities and agencies.

124.    The District failed to report to the DHS, even though Defendant had information regarding Arthur's misconduct that required reporting.

125.    The failure to report by the District was the direct and proximate cause of the abuse of Plaintiff, thereby causing Plaintiff mental anguish and physical injury.

126.    The District's failures to abide by its statutory duties is negligence *per se*.

## Count 4 – Intentional Infliction of Emotional Distress
### (Against Ron Arthur)

127.    Defendant Arthur intentionally and/or recklessly caused Plaintiff's emotional distress.

128.    The physical and mental abuse that Defendant Arthur gave to Plaintiff was done maliciously.

129.    Arthur's actions were extreme and outrageous and beyond the bounds of decency.

130.    Arthur's actions were atrocious and utterly intolerable in a civilized society.

131.    As a direct result of Arthur's actions, Plaintiff was severely traumatized, beyond which a reasonable young man would be expected to endure.

132.    Arthur intentionally and/or recklessly caused Plaintiff emotional distress.

133.    Arthur's actions were intentional and/or reckless, with disregard for the rights of others, including the rights of Plaintiff.

## VI.    PRAYER

134.    Plaintiff is entitled to recover actual and punitive damages against Defendant Arthur to deter him, and others similarly situated, from this behavior in the future and to punish him for his socially unacceptable behavior.

135.    Plaintiff respectfully requests judgment in his favor and against Defendants as follows:

  a. compensatory damages, including Plaintiff's physical damages as well as for his psychological and emotional distress;

  b. punitive damages;

  c. injunctive relief;

  d. all other damages or relief deemed appropriate by the Court or jury;

  e. costs; and

  f. reasonable attorneys' fees.

Respectfully submitted,

*/s/ Cameron Spradling*
CAMERON SPRADLING, OBA No. 8509
*Attorney & Counselor at Law*
500 North Walker Ave., Suite 100
Oklahoma City, OK  73102
Telephone: (405) 605-0610
Facsimile: (405) 605-0615
*Cameron@CameronSpradling.com*

ATTORNEY FOR PLAINTIFF