**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-23-473-R** |
| | ) | |
| **INDEPENDENT SCHOOL DISTRICT** | ) | |
| **NO. 93 OF POTTAWATOMIE COUNTY,** | ) | |
| **OKLAHOMA, a/k/a SHAWNEE** | ) | |
| **SCHOOL DISTRICT, a/k/a SHAWNEE** | ) | |
| **PUBLIC SCHOOLS; and** | ) | |
| **RONALD GENE ARTHUR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

Before the Court is Defendant Independent School District No. 93 of Pottawatomie

County's Motion to Dismiss [Doc. No. 23] seeking dismissal with prejudice of Plaintiff's

First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The matter is fully briefed

[Doc. Nos. 28, 29] and at issue.

The Plaintiff in this action is a former student of Shawnee High School who was

allegedly sexually harassed by Defendant Ronald Gene Arthur, a teacher, coach, and

assistant athletic director employed by the District from 2006-2021. The Amended

Complaint [Doc. No. 17] alleges that shortly after graduation in May 2021 Arthur began

communicating with Plaintiff through a social media app. On two occasions, Arthur picked

Plaintiff up from his home, drove him to a dead-end street, and engaged in sexual activity

with him. At the time of these incidents, Arthur was employed as the assistant athletic director at Shawnee High School and Plaintiff was a recent graduate and member of the school wrestling team. Plaintiff eventually made a report to law enforcement and Arthur was arrested.

This was not the first time Arthur allegedly engaged in inappropriate behavior with a student. The Amended Complaint details several instances where the school superintendent or teachers either received reports or personally observed instances where Arthur made inappropriate comments or physical contact with students. *See* First Am. Compl. ¶¶ 72-73 (student told teacher in 2006 that Arthur constantly texted him and engaged in sexual activity with him); ¶¶ 15-25 (2007 report to superintendent that Arthur suggested porn sites to 14-year-old student and touched his genitals); ¶¶ 40-42 (August 2015 admonishment for sending inappropriate text messages to students); ¶¶ 43 (2018 email from parent to superintendent that Arthur's "actions have not changed" and he is "grooming kids such as a pedophile would do"); ¶ 44 (2018 letter from parent and school board member to superintendent that Arthur makes inappropriate statements to students and that inappropriate conduct may be occurring with student athletes); ¶ 50 (2018 incident where two teachers observed Arthur alone with male students in direct violation of directives and reported it to administrators); ¶ 51 (2020 admonishment for sending a message to a student stating "Where is my goodnight text?"); ¶ 80 (teacher reported to administration that Arthur bought student a cell phone, frequently drove him to school, and promised to take him on a trip). Some of these incidents were investigated by the District and resulted in written reprimands. *Id.* at ¶¶ 23-29 (placing Arthur on a "Professional

Growth Plan" in April 2007 that directed him to "avoid touching [students'] genitals" and required him to complete a book report); ¶¶ 34-35 (November 2007 admonishment for singling out and meeting alone with student who made prior complaint); ¶¶ 37-38 (2008 admonishment for violating prior directives and instructing players to maintain a "code of privacy"); ¶¶ 40-42 (August 2015 admonishment for sending inappropriate text messages to students); ¶¶ 45-47 (suspension for inappropriate comments and interactions with students); ¶ 51 (2020 admonishment for sending inappropriate text message to student).

Based on these allegations, Plaintiff brings claims against the District under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, Title IX, and state law. Essentially, the Amended Complaint asserts that the District's negligence and deliberate indifference in the face of prior complaints caused Plaintiff to become another victim of Arthur's sexual misconduct. The District seeks dismissal, contending that Plaintiff has failed to state a plausible a claim under any of these theories.[1]

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

---

[1] Both parties urge the Court to take judicial notice of certain facts outside the pleadings. The Court's conclusion regarding the sufficiency of the allegations is not impacted by the absence or inclusion of these additional facts.

complaint "does not need detailed factual allegations" to state a plausible claim, although it does require "more than labels and conclusions." *Twombly*, 550 U.S. at 555. All well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

## DISCUSSION

### A. Claims brought under 42 U.S.C. § 1983

Plaintiff asserts claims against the District under 42 U.S.C. § 1983, contending that the District's policies and customs, including its failure to train and supervise employees, caused a violation of his Fourteenth Amendment right to substantive due process and equal protection.[2] To establish liability against the District under § 1983, "a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." *Murrell*, 186 F.3d at 1249.

---

[2] The District argues that the equal protection claim fails because there are no facts indicating that Plaintiff was treated differently than other students. However, the Tenth Circuit has held "that sexual harassment...can violate the Fourteenth Amendment right to equal protection of the laws." *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1251 (10th Cir. 1999) (quotation marks omitted); *see also Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.,* 511 F.3d 1114, 1124 (10th Cir. 2008) ("Sexual harassment by a state actor may violate the equal protection clause."). Additionally, under some circumstances, a teacher's unwelcome, sexually motivated physical contact with a student can be actionable under the due process clause. *See N.F. on behalf of M.F. v. Albuquerque Pub. Sch.*, No. 14-CV-699 SCY/RHS, 2015 WL 13667294, at *4 (D.N.M. Jan. 30, 2015); *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights.").

In seeking dismissal of the § 1983 claims, the District first seeks to discount the role played by the school superintendent, arguing that the school board is the final policy making authority for the District. The Tenth Circuit, applying Oklahoma law, has indicated that a superintendent may be a final policymaker for a school if the superintendent is authorized to implement a policy. *See J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 457 (10th Cir. 2010); *see also Kerns v. Indep. Sch. Dist. No. 31 of Ottawa Cnty.,* 984 F. Supp. 2d 1144, 1153 (N.D. Okla. 2013). The Amended Complaint includes allegations indicating that the school board charged the superintendent with implementing and coordinating the response to any complaints of sexual harassment. *See* Am. Compl. ¶¶ 19-20. Plaintiff has therefore plausibly alleged that the actions of the superintendent in responding (or failing to respond) to complaints concerning Arthur's behavior may be considered those of a final policymaker.

The District next argues that Plaintiff has not plausibly identified any custom or practice of the District that was the moving force behind the alleged constitutional violation. In the absence of an official policy, a plaintiff seeking to impose municipal liability under § 1983 may point to "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and brackets omitted). Here, Plaintiff's claim is premised on the District's allegedly repeated failure to properly report and respond to complaints regarding misconduct and a failure to enact appropriate policies. To impose municipal liability for a failure to act, a "plaintiff

must prove (1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff." *Rost*, 511 F.3d at 1125. Of course, "[o]ne prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations." *Coffey v. McKinley Cnty.*, 504 F. App'x 715, 719 (10th Cir. 2012).

Here, drawing all reasonable inferences in Plaintiff's favor, the Court finds the allegations in the Amended Complaint sufficient to survive a motion to dismiss. The Amended Complaint contains allegations showing the District had notice that Arthur was repeatedly engaging in inappropriate behavior with students and its response was to issue Arthur a series of ineffectual reprimands and have him complete a book report. A reasonable inference to be drawn from these allegations is that the District knew of Arthur's continuing and persistent pattern of sexual misconduct and failed to respond in an adequate manner, which allowed Arthur to continue harassing students, including Plaintiff.

The District pushes back on this conclusion by arguing that the prior complaints were not sufficiently similar or numerous to establish a widespread practice. True, some of the prior complaints concern inappropriate communications or conduct that falls short of physical touching or sexual assault. But given the fact that Arthur was first admonished for inappropriately touching a student, subsequent complaints detailing inappropriate communications, meeting with students alone, and instructing students to maintain a code of privacy could be construed as raising serious concerns regarding Arthur's behavior, to say nothing of the two complaints from parents specifically warning that Arthur may be

6

engaging in sexual misconduct with students. Further, the school's own communications to Arthur describe him as engaging in "a repeated pattern of professional judgment concerns as related to student communication." *See* Am. Compl., Ex. 13. At this stage, where a plaintiff need only plausibly allege the elements of his claim as opposed to prove his case, the Court finds that the allegations are sufficient to raise an inference that the District was deliberately indifferent to a persistent pattern of sexual harassment at the school.

The District also seeks to dismiss any § 1983 claims based on a failure to train or supervise employees, arguing once again that the allegations are insufficient to show that the District had notice of Arthur's behavior or acted with deliberate indifference. But as explained above, the Amended Complaint plausibly alleges that teachers and administrators at the school had notice of Arthur's repeated inappropriate behavior. Further, some of the allegations suggest that complaints regarding Arthur's behavior were totally ignored by teachers and administrators. These allegations, combined with Plaintiff's allegations that the District did not train administrators or teachers regarding the appropriate way to investigate and report sexual assault, are sufficient to state a plausible claim based on a failure to train theory.

Plaintiff asserts one additional theory of relief under § 1983 and here the District's argument for dismissal is more persuasive. Plaintiff alleges that the District is responsible for a violation of Plaintiff's substantive due process rights under the state created danger theory, which provides an exception to the general rule that "state actors are liable only for their own acts, and not the violent acts of third parties." *Armijo By & Through Chavez v.*

*Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998).[3] The Tenth Circuit

explains this theory as follows:

> To invoke the danger-creation theory, a plaintiff must show a state actor
> affirmatively acted to create, or increases a plaintiff's vulnerability to, danger
> from private violence. If a plaintiff meets those preconditions, a plaintiff
> must next demonstrate:
>
> > (1) the charged state entity and the charged individual actors created the
> > danger or increased plaintiff's vulnerability to the danger in some way;
> > (2) plaintiff was a member of a limited and specifically definable group;
> > (3) defendants' conduct put plaintiff at substantial risk of serious,
> > immediate, and proximate harm;
> > (4) the risk was obvious or known;
> > (5) defendants acted recklessly in conscious disregard of that risk; and
> > (6) such conduct, when viewed in total, is conscience shocking.

*T.D. v. Patton*, 868 F.3d 1209, 1222 (10th Cir. 2017) (internal quotations and alterations

omitted). Plaintiff's claim falls short of these requirements in multiple ways. First,

Plaintiff's claim is premised on the District's failure to act in the face of specific

information about Arthur as opposed to an affirmative action that increased the risk to

Plaintiff. *See Graham*, 22 F.3d at 995 (explaining that in the absence of a custodial

relationship, "defendants' alleged nonfeasance in the face of specific information which

would mandate action does not invoke the protections of the Due Process Clause.").

Further, Plaintiff has not sufficiently alleged that he was a member of a limited group or

that the District's conduct exposed him to immediate harm. Rather, the allegations suggest

that the District's failures exposed all students at the school to an ongoing, indefinite risk.

*See Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (explaining that the conduct

---

[3] The Tenth Circuit has described a sexual relationship between a teacher and student as
private activity for purposes of the state created danger theory. *J.M.*, 397 F. App'x at 458.

must impose "an immediate threat of harm, which by its nature has a limited range and duration" and "should be directed at a discrete plaintiff rather than at the public at large."); *Graham*, 22 F.3d at 995 (finding that school district "did not create a hazardous situation by placing the aggressor and victim in the same location" because the risk involved in enrolling an aggressive student in school was "indefinite"). Accordingly, Plaintiff has failed to state a plausible claim for violations of his Fourteenth Amendment rights under the state created danger theory.

Plaintiff's § 1983 claim based on the state created danger theory is dismissed without prejudice for failure to state a claim. The District's motion to dismiss is denied with respect to the remaining § 1983 claims.

**B. Title IX Claims**

Plaintiff asserts that the District's deliberate indifference to prior instances of sexual misconduct by Arthur violated Title IX of the Education Amendments of 1972. To state a claim under Title IX, a plaintiff "must allege that the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell*, 186 F.3d at 1246. It is unnecessary to discuss each of these elements in detail because Plaintiff's claim clearly fails at the fourth step.

The Amended Complaint alleges that Plaintiff graduated from high school, Arthur subsequently contacted Plaintiff and they engaged in sexual activity, and Plaintiff then attended a sports tournament with the high school wrestling team later that summer. Even

assuming that the summer sports activities were school sponsored, there are no facts plausibly suggesting that Arthur's alleged harassment of Plaintiff or the District's allegedly inadequate institutional response to complaints of misconduct deprived Plaintiff of any educational benefits or extracurricular activities. Plaintiff has therefore failed to state a plausible Title IX claim. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999) (explaining that Title IX requires "that the behavior be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity"); *Murrell*, 186 F.3d at 1249 (explaining that a Title IX plaintiff must allege that "the school officials' deliberate indifference deprived [the plaintiff] of access to the educational opportunities or benefits provided by [the school defendant]"); *Roe v. Pennsylvania State Univ.*, No. CV 18-2142, 2019 WL 652527, at *8 (E.D. Pa. Feb. 15, 2019) (dismissing Title IX claim because the plaintiff "fail[ed] to detail a single instance about how she was deprived of access to Penn State's educational benefits or opportunities, such as dropping classes (or elongating her enrollment at Penn State), withdrawing from Penn State, stopping her employment as an auxiliary officer, or otherwise changing her educational activities"); *Doe by & through Doe v. Liberty Cnty. Sch. Dist.*, No. 4:20-CV-53, 2022 WL 1402057, at *13 (S.D. Ga. Mar. 23, 2022) (granting summary judgment on Title IX claim where Plaintiff failed to provide facts showing that the harassment "precluded him from taking advantage of the School's programs").

### C. Negligence Claims

Plaintiff's final claim asserts that the District acted negligently in a variety of ways, including in its hiring, supervision and retention of Arthur, its implementation of policies,

and its training. The District argues that it is exempt from liability for its alleged negligence under the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 et seq.

First, to the extent Plaintiff's claims are premised on the failure to adopt or enforce policies to protect students from sexual harassment, the District is exempt from liability under § 155(4) of the OGTCA, which provides that a political subdivision shall not be liable for a loss resulting from the "[a]doption or enforcement of or failure to adopt or enforce a…regulation or written policy."

Second, this Court has previously found that claims against a school district for negligently hiring, training, supervising, or retaining a teacher or negligently failing to maintain safe school premises fall within the discretionary function exemption outlined in § 155(5). This provision precludes liability against a political subdivision for claims resulting from the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." Okla. Stat. tit. 51, § 155(5). *See also Franks v. Union City Pub. Sch*., 943 P.2d 611, 613 (Okla. 1997) (explaining that discretionary functions protected under this exemption "include the policy making and planning decisions, although not negligent performance of the policy"). The Court finds no basis in the parties' briefing to alter its prior analysis on the applicability of this exemption. *See Nation v. Piedmont Indep. Sch. Dist. No. 22,* No. CIV-18-1090-R, 2019 WL 4452953, at *3 (W.D. Okla. Sept. 17, 2019); *Najera v. Indep. School Dist. of Stroud,* 60 F. Supp. 3d 1202 (W.D. Okla. 2014); *see also Langkamp v. Mayes Emergency Servs. Tr. Auth.,* No. 16-CV-0676-CVE-FHM, 2017 WL 875483, at *4 (N.D. Okla. Mar. 3, 2017) (explaining that "[t]he Oklahoma Supreme Court has not addressed the question of whether

a political entity's failure to hire, train, supervise, monitor, and/or retain its employees falls under the § 155(5) discretionary function exception" but numerous district courts have concluded that these actions "implicate a political entity's policy and planning functions and therefore fall under the discretionary function exemption of § 155(5)"); *Jackson v. Oklahoma City Pub. Sch.*, 333 P.3d 975, 979 (Okla. Civ. App. 2014) ("It is also settled that a school's hiring, training, and supervising decisions are discretionary and therefore a school may not be liable for damages resulting from those decisions."); *Richman v. Straley*, 48 F.3d 1139, 1146–47 (10th Cir.1995) (considering exemption in Federal Tort Claims Act and finding that "[d]ecisions regarding employment and termination are inherently discretionary, especially where, as here, the relevant statutes provide no guidance or restrictions").

Last, Plaintiff argues that the discretionary function exemption does not completely bar his negligence claim because it is based on the District's failure to properly implement policies concerning the handling of complaints of abuse, as opposed to the complete failure to adopt or enforce policies. *See* Am. Compl. ¶¶ 143(f), 146. Given that the discretionary function exemption is to be construed narrowly and "do[es] not apply to tortious acts of government servants in the daily implementation of policy," *State ex rel. Oklahoma Dep't of Public Safety v. Gurich,* 238 P.3d 1, 4 (Okla. 2010), the Court is not persuaded that dismissal of this aspect of the negligence claim is warranted at this stage. As this Court has previously noted, once a school district is notified of complaints of misconduct and decides to respond, it must proceed in its work with reasonable care and in a non-negligent manner. *See Najera,* 60 F. Supp. 3d at 1206 (W.D. Okla. 2014). Plaintiff has included sufficient

factual content from which it can be plausibly inferred that the District's allegedly inappropriate response to complaints of misconduct involved the negligent performance of a policy as opposed to a discretionary act of policy making.

## CONCLUSION

As outlined above, the District's Motion to Dismiss [Doc. No. 23] is GRANTED in part and DENIED in part. Plaintiff's Title IX claim, § 1983 claim based on the state created danger theory, and negligence claims based on a failure to adopt a policy or negligent hiring, training, supervision, or retention are dismissed without prejudice.

IT IS SO ORDERED this 29th day of December, 2023.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE