IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KYLE HELIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV-23-473-R |
| ) | |
| INDEPENDENT SCHOOL DISTRICT ) | |
| NO. 93 OF POTTAWATOMIE COUNTY, ) | |
| OKLAHOMA, a/k/a SHAWNEE PUBLIC ) | |
| SCHOOLS; and ) | |
| RONALD GENE AUTHOR, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is Defendant Independent School District No. 93 of Pottawatomie County's Motion to Compel Senator Shane Jett to Respond to District's Subpoena [Doc. No. 46]. Senator Jett filed a response in opposition [Doc. No. 49] and the District replied [Doc. No. 50].[1]

This action arises from Defendant Ronald Arthur's sexual harassment of a student while Arthur was employed as an athletic coach at Shawnee High School. Plaintiff asserts federal and state law claims against Defendant District based on its alleged failure to train

---

[1] Senator Jett contends the motion to compel is not ripe for disposition because the parties did not confer prior to seeking court intervention as required by LCvR 37.1. Senator Jett does not, however, dispute that his counsel did not respond to phone calls left by the District. Although the District's counsel could certainly have been more persistent, under these circumstances, the Court is not persuaded that denying the motion for failure to comply with LCvR 37.1 is warranted. However, as explained further below, the Court finds that a meet and confer to discuss the issues outlined in this Order would be beneficial and therefore directs the parties to personally confer regarding those issues.

its employees or respond to prior complaints of sexual harassment involving Arthur. In defending against these claims, the District issued a subpoena pursuant to Fed. R. Civ P. 45 to Shane Jett, an Oklahoma State Senator and non-party to this action. The District contends, and Senator Jett acknowledges, that some school employees and students shared information with Senator Jett about the sexual assault allegations at Shawnee High School and that Senator Jett sent a letter to the Oklahoma Attorney General requesting a multi-county Grand Jury investigation into the District's actions. *See* Senator Jett's Response Brief, Ex. 1, ¶¶ 7-9. Senator Jett's letter to the Attorney general indicates that he performed "hours of interviews" with parents, students, school employees and victims and "discovered" a systematic pattern of indifference by school administrators and board members. *See* Reply Br., Ex. 1. Senator Jett's wife also posted on a social media that "Shane and I have been with the families directly affected" by the abuser and "We have the police reports, affidavits from hours of interviews and letters from parents, teachers and others in the community impacted by this dereliction of duty." *See* District's Br., Ex. 3.

Against this backdrop, the District's subpoena to Senator Jett seeks production or inspection of the following:

> 1. All communications received from past and present Shawnee Public Schools parents, students, teachers, and school employees regarding Ronald Arthur from 2006 until present.
>
> 2. All communications sent to past and present Shawnee Public Schools parents, students, teachers, and school employees regarding Ronald Arthur from 2006 until present.
>
> 3. All communications received from alleged victims of Ronald Arthur from 2006 until present.

4. All communications sent to alleged victims of Ronald Arthur from 2006 until present.

5. All interview notes from interviews of past and present Shawnee Public Schools parents, students, teachers, and school employees regarding Ronald Arthur from 2006 until present.

6. All communications sent to former Oklahoma Attorney General, John O'Connor regarding Ronald Arthur.

7. All communications received from former Oklahoma Attorney General, John O'Connor regarding Ronald Arthur.

8. All communications sent to Pottawatomie County Sheriffs Office regarding Ronald Arthur.

9. All communications received from Pottawatomie County Sheriffs office regarding Ronald Arthur.

10. All documents evidencing phone calls received from Senator Shane Jett's constituents concerning Ronald Arthur.

11. All communications with news/ media outlets regarding Ronald Arthur.

12. All documents generated as a result of any investigation into claims made against Ronald Arthur.

13. All documents provided to former Oklahoma Attorney General John O'Connor or his office regarding Ronald Arthur.

*See* District's Br., Ex. 1. Senator Jett objects to these requests as seeking information protected by the legislative privilege. The District contends the documents sought are plainly relevant and fall outside the scope of the legislative privilege.

Federal Rule of Civil Procedure 45 authorizes this Court to enforce, quash, or modify the subpoena served on Senator Jett. Fed. R. Civ. P. 45(d)(2)-(3). Because a subpoena served on a third party pursuant to Rule 45 is considered discovery, *Ward v. Liberty Ins. Corp.*, No. CIV-15-1390-D, 2018 WL 991546, at *1 (W.D. Okla. Feb. 20,

2018), the scope of discovery in Rule 26(b)(1) generally applies:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Additionally, where "[a] person withhold[s] subpoenaed information under a claim that it is privileged[,]" Rule 45(e)(2) requires the person to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." This requirement is part and parcel of the general rule that "a party objecting to discovery on grounds of privilege has the burden to establish the privilege." *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005). "While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076-C, 2018 WL 2976432, at *1 (W.D. Okla. June 13, 2018) (quotation omitted).

As noted, Senator Jett resists responding to the subpoena on the basis of legislative privilege. Before addressing the merits of that position, there is a preliminary issue that needs clarification. Senator Jett's initial objection to the subpoena was grounded exclusively on the Speech and Debate Clause contained in Oklahoma's state constitution. *See* Okla. Const. art. 5, § 22. This provision provides that "Senators and Representatives shall, except for treason, felony, or breach of the peace, be privileged from arrest during

4

the session of the Legislature, and in going to and returning from the same, and, for any speech or debate in either House, shall not be questioned in any other place." *Id.* However, in his briefing to this Court, Senator Jett relies on the legislative privilege recognized by federal common law. For its part, the District makes no effort to identify whether state or federal privilege law controls the issue.

Federal Rule of Evidence 501 provides that the common law governs a claim of privilege "[b]ut in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." This action includes federal and pendant state law claims and it appears that the information sought by the subpoena is relevant to both sets of claims. Where, as here, jurisdiction is based on a federal question and the evidence is germane to both federal and state law claims, "the best course of action is to have federal privilege law control." *Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1207, 1238 (D.N.M. 2021).[2]

Having clarified that federal privilege law governs, the Court turns to the crux of the parties' dispute: whether Senator Jett's communications with constituents, the state Attorney General, and the press are privileged. The legislative privilege "has deep roots in federal common law," *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015), and finds its origins in the "parallel concept of legislative immunity." *E.E.O.C. v. Washington Suburban*

---

[2] The issue may be largely academic as Oklahoma courts interpreting the state constitution's Speech and Debate Clause have been "guided by United States Supreme Court interpretations of the essentially identical federal constitutional provision." *Lindley v. Life Invs. Ins. Co. of Am.*, No. 08-CV-379-CVE-PJC, 2009 WL 2245565, at *3 (N.D. Okla. July 24, 2009).

*Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011). The common law has long recognized "[t]he privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). The Speech or Debate Clause of the United States Constitution reflects this "firmly established" principle and explicitly recognizes legislative immunity for federal lawmakers. *Id.* This clause provides that "Senators and Representatives shall…be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place." U.S. Const. art. I, § 6.

In addition to "granting federal lawmakers absolute immunity from civil and criminal liability for their legislative acts," the Supreme Court has interpreted this clause as establishing "an absolute evidentiary privilege that protects federal lawmakers from having evidence of their legislative acts introduced in a proceeding against them and from being compelled to testify about their legislative acts before a grand jury." *Am. Trucking Associations, Inc. v. Alviti*, 14 F.4th 76, 86 (1st Cir. 2021) (internal citations omitted). Although the Speech and Debate Clause only applies to federal lawmakers, the Supreme Court has recognized a common law legislative immunity for state lawmakers and cases applying the federal constitutional provision provide guidance in interpreting the limits of the common law immunity. *See Supreme Ct. of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 732 (1980) ("We have also recognized that state legislators enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause."); *see also*

*Tenney,* 341 U.S. at 372; *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency,* 440 U.S. 391, 405-06 (1979). The "[l]egislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes." *Washington Suburban*, 631 F.3d at 181. Amongst those values, is the need to "protect[] legislators from proceedings that 'divert their time, energy, and attention from their legislative tasks,' otherwise delay and disrupt the legislative function, or deter[ ] ... the uninhibited discharge of their legislative duties.'" *Alviti*, 14 F.4th at 87 (internal citations omitted).

Broadly stated, the legislative privilege "covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation." *Hubbard*, 803 F.3d at 1308. Legislative immunity therefore has an important limitation: it "protects only 'legislative,' not 'political,' acts." *Bastien v. Off. of Senator Ben Nighthorse Campbell*, 390 F.3d 1301, 1305 (10th Cir. 2004); *see also Washington Suburban*, 631 F.3d at 183-84 (explaining that the legislative privilege extends only to legislative acts).[3] Although drawing the line between legislative and political acts is not always straightforward, there are several Supreme Court and Tenth Circuit cases that provide guidance.

To begin, there is no doubt that legislative immunity includes conduct that occurs during official legislative proceedings, including investigations that occur as part of a legislative committee. *See Tenney*, 341 U.S. at 377 ("Investigations, whether by standing

---

[3] Oklahoma law recognizes a similar "distinction between 'purely legislative activities' and those that are nongermane 'political matters.'" *Brock v. Thompson*, 948 P.2d 279, 288 (Okla. 1997) (citing *United States v. Brewster,* 408 U.S. 501 (1972)).

7

or special committees, are an established part of representative government."). The Supreme Court has, however, expressly declined to read the Speech and Debate Clause "as protecting all conduct relating to the legislative process." *Gravel v. United States*, 408 U.S. 606, 515 (1972).

Thus, in *Gravel*, which concerned a senator's private publication of the Pentagon Papers, the Supreme Court explained that "[l]egislative acts are not all-encompassing" and many of the activities performed by legislators in the course of their official duties are beyond the scope of legislative activity:

> That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity.

*Id.* at 625. *Gravel* then stated that, to the extent the Speech and Debate Clause is construed to reach matters that go beyond debate in the legislature, the actions "must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* at 625.

*United States v. Brewster*, 408 U.S. 501 (1972), which involved the criminal prosecution of a senator, further elaborated on what conduct qualifies as legislative activity:

> It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government

8

> agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause.

*Brewer*, 408 U.S. at 512-513.

The Tenth Circuit's opinion in *Bastien*, 390 F.3d at 1301, also discusses the distinction between privileged legislative acts and non-privileged political acts. The issue in *Bastien* was whether the Speech and Debate Clause precluded the plaintiff from pursuing an employment discrimination claim against a United States senator.[4] *Id.* at 1304. The Tenth Circuit, after thoroughly reviewing Supreme Court precedent, took the view that "only official, formal acts (or perhaps their functional equivalent) deserve the adjective 'legislative.'" *Id.* at 1305. From *Bastien*:

> To say that "Speech or Debate in either House" is to be construed broadly is not, however, to say that it should be cast free from its mooring. In particular, it should not be, and has not been, read to make members of Congress into a special class of citizens protected from suit (or prosecution) arising out of any activity that could assist in the performance of their official duties. After all, virtually anything that a member of Congress does could be said to relate, more or less directly, to official business (e.g., causing an accident when speeding to attend a constituent's dinner party). And although any suit or prosecution against a member of Congress could improperly influence the

---

[4] Although the Tenth Circuit found that the claim could proceed because the suit did not question official legislative business, it declined to address "whether certain evidence may be inadmissible in this litigation because it concerns such conduct." *Bastien*, 390 F.3d at 1304. Nevertheless, the Tenth Circuit's interpretation and application of the scope of legislative immunity provides guidance as to the scope of the corresponding evidentiary privilege.

> member in the conduct of official duties, the Clause does not protect against all such intrusions. The Supreme Court's jurisprudence indicates that the Clause's protection is limited to the conduct of official business of the member's chamber. Other activities by members are "political" rather than "legislative," however important they may be. In other words, "Speech or Debate" has been interpreted broadly to encompass voting, issuing reports, and other formal activity, but the phrase "in either House" that immediately follows "Speech or Debate" has limited the protection to official conduct.

*Id.* at 1306-07. Of particular import here, the Tenth Circuit was not persuaded that all information gathering by lawmakers was properly classified as a legislative act:

> What Defendant does suggest is that meetings with constituents or other members of the public—either by the Senator himself or by his aides—are legislative acts to the extent that information is gathered that could affect his votes or his efforts to craft proposed legislation….No Supreme Court opinion indicates that Speech or Debate Clause immunity extends to informal information gathering by individual members of Congress….The Court's discussions in its opinions of the importance of information gathering is for the purpose of establishing that such activity is a proper congressional function and, when conducted by a committee, should be treated just as voting and debating legislation. To extend protection to informal information gathering—either personally by a member of Congress or by congressional aides—would be the equivalent of extending Speech or Debate Clause immunity to debates before local radio stations or Rotary Clubs.

If nothing else, this brief survey of relevant case law establishes that legislative immunity does not indiscriminately protect all conduct performed by a legislator in the course of his duties. Rather, careful consideration of whether the conduct qualifies as a legislative act must precede application of the legislative privilege.

Here, the District's subpoena to Senator Jett seeks communications with school employees, students, and parents, notes from those interviews, communications with the state Attorney General and local law enforcement, communications with news media, and documents generated as a result of any investigations. Senator Jett argues that he need not

produce any documents that are responsive to these requests because "the entire legislative process is protected." In his view, the fact that he spoke with these persons as part of his "legislative duties" and subsequently reviewed existing state law to determine whether legislation was necessary is sufficient to invoke the legislative privilege. The Court disagrees. Based on the Supreme Court and Tenth Circuit case law outlined above, Senator Jett "cannot claim legislative privilege from producing all the documents requested by the subpoena simply because they are in some way related to his duties as a state legislator." *Lindley*, 2009 WL 2245565, at *10. Instead, the privilege only extends to "documents or communications that are 'an integral part of the deliberative and communicative processes' by which legislators participate in legislative or committee proceedings." *Id.* (quoting *Gravel,* 408 U.S. at 625).[5]

On their face, the document requests outlined in the subpoena could plausibly reach documents that are not protected by the legislative privilege. *See United States v. Johnson,* 383 U.S. 169, 172 (1966) ("No argument is made, nor do we think that it could be

---

[5] In resisting his obligation to provide a privilege log or otherwise respond to the subpoena, Senator Jett cites to a discovery motion hearing that was held in *Plant Based Foods Assn. v. Stitt*, CIV-20-938-F (W.D. Okla. Oct. 28, 2022), but this case is distinguishable. Although, like here, *Plant Based Foods* involved an application of the federal common law legislative privilege to state legislators, the similarities largely end there. *Plant Based Foods* concerned whether a specific piece of state legislation was unconstitutionally vague and discriminatory. The document requests at issue sought information from state lawmakers for the purpose of showing the motivations of the lobbyists and lawmakers who supported the legislation. After noting that many of the requests were largely irrelevant to the issues in the case, the district court found the documents were protected from disclosure because they were aimed at "garden-variety legislative activity" and sought evidence concerning the subjective motivations of legislators, which is an area that strikes at the heart of the legislative privilege. Here, in contrast, the requests are broad enough to potentially include documents that fall outside the scope of the legislative privilege.

successfully contended, that the Speech or Debate Clause reaches conduct, such as was involved in the attempt to influence the Department of Justice, that is in no wise related to the due functioning of the legislative process."); *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979) ("Newsletters and press releases, by contrast, are primarily means of informing those outside the legislative forum; they represent the views and will of a single Member. It does not disparage either their value or their importance to hold that they are not entitled to the protection of the Speech or Debate Clause."); *Bastien,* 390 F.3d at 1316 (refusing "to stretch the meaning of 'Speech or Debate in either House' to include the everyday task of gathering views and information from constituents and others through informal contacts"). Of course, the requests are also broad enough that they may reach some information that is legislative in nature and therefore protected from disclosure. Ultimately, however, it is not possible for the Court to make this determination because Senator Jett has not adequately "describe[d] the nature of the withheld documents" as required by Rule 45(d).

Although Senator Jett has not met his burden of establishing that legislative privilege applies or fulfilled his obligations under Rule 45, the Court is nevertheless unwilling to enter an order compelling compliance with the subpoena at this time. The Court is mindful that there is a particular need to closely regulate discovery from non-parties and is of the opinion that at least some of the documents request in the subpoena are overly broad and burdensome on their face. *See, e.g.*, Request No. 10. The Court is also cognizant of the important purposes served by the legislative privilege, including the need to protect lawmakers from proceedings that deter the uninhibited discharge of their

legislative duties. Accordingly, the Court directs the parties to personally meet and confer within 21 days of the date of this Order to determine (1) whether the requests in the subpoena can be more narrowly tailored and (2) whether, given the Court's analysis of the legislative privilege set out above, Senator Jett is continuing to assert that responsive documents are protected by a legislative privilege. If, after making a good faith effort to resolve these issues, Senator Jett continues to assert that responsive documents are privileged, he is directed to "describe the nature of the withheld documents" in a manner that will enable the parties to assess the claim, as required by Rule 45.

As set out above, the District's Motion to Compel is DENIED without prejudice to refiling, if appropriate.

IT IS SO ORDERED this 13th day of September, 2024.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE