UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KYLE HELIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV-23-473-R |
| ) | |
| INDEPENDENT SCHOOL DISTRICT ) | |
| NO. 93 OF POTTAWATOMIE COUNTY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant Independent School District No. 93 of Pottawatomie County's Motion for Summary Judgment [Doc. No. 69], contending that the undisputed material facts establish that it is entitled to judgment as a matter of law on Plaintiff's constitutional and state law claims. The motion is fully briefed [Doc. Nos. 76, 77, 78] and at issue.

## FACTUAL BACKGROUND

The facts in this case are largely undisputed.[1] Plaintiff graduated from Shawnee Public Schools on May 17, 2021. *See* Def.'s Mot. ¶ 20. During his senior year of high school, Plaintiff downloaded a messaging application called Grindr to his personal cell phone. *Id.* ¶ 28. He did not use the application during school hours. *Id.* Plaintiff, who was just seventeen years old at the time, began communicating through Grindr with someone

---

[1] Plaintiff does not dispute the material facts set forth in the District's Motion for Summary Judgment and they are therefore admitted. *See* LCvR56.1(e)

1

identified as "Older for Younger." *Id.* The communications quickly turned sexual in nature and, at the other party's request, Plaintiff sent a photo of himself. *Id.*; Depo of Pl., Def's Ex. 22 at 27:4-13. The other party responded that he recognized Plaintiff in school. *Id.* Unbeknownst to Plaintiff, the "Older for Younger" user was Ronald Arthur, the boys' basketball coach and athletic director at Shawnee Public Schools. Def.'s Mot. ¶ 28

On May 27, 2021, after Plaintiff graduated from high school, Plaintiff and Arthur communicated through Grindr and agreed to meet. *Id.* at ¶ 29. Prior to the meeting, Arthur sent a photo of himself and, for the first time, Plaintiff became aware of who he had been communicating with. *Id.* Arthur picked Plaintiff up from his house and they engaged in what Plaintiff described as consensual sexual activity. *Id.* On July 22, 2021, Plaintiff and Arthur again communicated through Grindr, met, and engaged in consensual sexual activity. *Id.* at ¶ 30. Two days later, Plaintiff's mother reported Arthur's conduct to law enforcement. *Id.* at ¶ 31. Arthur was eventually arrested and charged in connection with these events. *Id.* at ¶ 38. After learning that Arthur was being investigated for inappropriate conduct with a student, the District's Superintendent suspended and then recommended Arthur for termination. *Id.* at ¶¶ 37, 43 He ultimately resigned. *Id.* at ¶ 44.

Prior to the events above, Plaintiff's interactions with Arthur were limited. There were some informal greetings in the school hallway and, during the last month of the school year, a meeting where Arthur asked Plaintiff about what qualities he would like in a new wrestling coach, Arthur offering to escort Plaintiff to his vehicle to retrieve something, and Arthur touching Plaintiff's hips while showing him how to shoot a basketball. Plaintiff was

2

a member of the school wrestling team, but Arthur was not Plaintiff's coach.[2] *Id.* at ¶ 27.

However, Arthur had several highly inappropriate interactions with other students during his tenure as the basketball coach and assistant athletic director for Shawnee Public Schools:

- March 30, 2007 – a ninth grade student complained to the District that Arthur made sexually explicit comments and inappropriately touched him. The allegations were reported to the local police department which recommended that charges be filed, but the district attorney declined. The District's Superintendent suspended Arthur without pay pending an investigation. During the investigation, Arthur admitted that his comments and actions were improper. The Principal and Superintendent issued Arthur a "Professional Growth Improvement Plan" that, among other things, instructed Arthur to avoid touching his students' genitals and to avoid calling students on cell phones and making comments about pornography. Arthur was then instructed to hold a conference with his ninth grade students to acknowledge that his conduct had been "misguided and wrong" and to either attend a conference or counseling sessions to help him understand "the behavior that is expected of a professional." On June 18, 2007, the Superintendent determined that Arthur had satisfied the terms of the plan and no additional performance requirements were indicated.

- September 20, 2007 – Arthur sent a letter to the Superintendent indicating that the same ninth grade student had decided to leave the basketball team. Arthur stated that he had met alone with the student in his office and encouraged a "code of privacy" on the basketball team but claimed he did not touch or speak to the student inappropriately. The Superintendent and principal issued Arthur an admonishment and directed him to not meet alone with players, not ridicule or defame students in front of the team, end the "code of privacy," and have two sessions with a counselor.

---

[2] The District's factual statement includes facts about Plaintiff's participation in a wrestling tournament after graduation. The events were not sponsored by the school district and the funds used to provide training and transportation to the events were provided by a booster club that is recognized by the District but not subject to its control. The District argues that these post-graduation events cannot provided the required nexus between Arthur's action and the District. Plaintiff confessed this argument by failing to respond and admitted the facts as outlined by the District.

3

- November 17, 2008 – the Superintendent issued Arthur a reprimand for continuing to instruct players that there is a code of privacy on the basketball team. Arthur was directed to have a team meeting to correct this understanding.

- August 24, 2015 – the Director of Athletics issued Arthur an admonishment for sending inappropriate text messages to a student. He was directed to complete an online course and review board policies.

- March 2018 – The Superintendent received a letter from a parent stating that Arthur spent time alone with her son at non-school functions, Arthur develops relationships with particular students, and Arthur makes inappropriate statements to the athletes.

- April 4, 2018 – The Superintendent received an email from the mother of the ninth grade student that originally complained about Arthur. The email stated that Arthur still seeks to have relationships with players outside the classroom, she saw Arthur at the movie theater with young teens, he continues to make inappropriate comments to kids, and that he is "grooming kids" as a pedophile would do. In response, the Superintendent suspended Arthur with pay while the concerns were investigated. During the investigation, a student stated that Arthur made sexually explicit comments during the prior semester, Arthur spent time with him outside of school hours, and Arthur engaged in "horseplay" during practices. At the conclusion of the investigation, the Assistant Superintendent issued a letter reinstating Arthur and outlining a "list of expectations" such as refrain from "horseplay or other physical acts with your students," refrain from "obscenities and sexual innuendo," obtain parent approval before transporting a student, and do not meet alone with students.

- April 2020 – A parent reports to the Superintendent that Arthur sent a text message to a student that said "Where is my goodnight text?". Arthur admitted to sending the text. The Assistant Superintendent issued Arthur a letter of admonishment noting that he had a repeated pattern of professional judgment concerns related to student communication and he was to refrain from private electronic communications with students.

*See id.* at ¶¶ 2-18. Following the April incident, the District informed Arthur that he would

no longer be selected to be the boys' basketball coach but he continued to serve as the assistant athletic director for the 2020-2021 school year.[3] *Id.* at ¶ 19.

Against this backdrop, Plaintiff asserts that the District's policies and customs, including its failure to train and supervise employees, caused a violation of his Fourteenth Amendment right to substantive due process and equal protection under the law. He also asserts that the District was negligent in its implementation of policies concerning the handling of complaints of abuse. The District contends that it is entitled to summary judgment on all claims.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, at this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or

---

[3] In his response brief, Plaintiff includes an investigative report from the Office of Attorney General that identifies additional instances of inappropriate conduct by Arthur based on interviews with parents and school staff. The District objects to this report as inadmissible hearsay. It is unnecessary to resolve this evidentiary objection because, even if the report were admissible, the Court would still find that the District is entitled to summary judgment on the § 1983 claims.

whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249–52. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## DISCUSSION

Plaintiff contends that the District's policies, customs, inadequate training, or deliberately indifferent response to sexual misconduct by Arthur caused a violation of Plaintiff's Fourteenth Amendment rights. The District argues that these constitutional claims fail as a matter of law because Arthur was not acting under color of state law when he sexually harassed, abused, or engaged in misconduct with Plaintiff.[4]

The Tenth Circuit recognizes that physical sexual abuse or harassment of a student by a teacher can give rise to an actionable claim under § 1983 for a violation of the student's Fourteenth Amendment rights. *See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008); *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1251 (10th Cir. 1999); *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996). However, "a separate and essential element of such a claim is that the abuse occur under color of state law." *Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir. 1997) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)). "The 'under color of state law' requirement is 'a jurisdictional requisite for a § 1983 action[.]'" *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (quoting *Polk County v. Dodson*, 454 U.S.

---

[4] Because Plaintiff has confessed the District's argument as to this essential element and otherwise failed to raise a genuine issue of material fact as to whether Arthur was acting under color of law, the Court finds it unnecessary to address the District's additional arguments in support of its motion for summary judgment.

312, 315 (1981).

"To occur under color of state law, the deprivation of a federal right 'must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor ... because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *How v. City of Baxter Springs, Kansas*, 217 F. App'x 787, 792 (10th Cir. 2007) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).[5] Notably, this definition "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful[.]'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). Further, "it is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) (quotation marks omitted). "Acts of a state officer in the ambit of his personal pursuits are not acts under color of state law." *D.T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee Cnty.*, 894 F.2d 1176, 1186 (10th Cir. 1990).

Here, the District contends that Arthur was not acting under color of state law during his interactions with Plaintiff and points to several undisputed facts in support of this postition. Most significantly, Plaintiff was not a student at Shawnee Public Schools when

---

[5] Section 1983's "under color of state law" requirement is "identical to the Fourteenth Amendment's state-action requirement." *Darr v. Town of Telluride*, 495 F.3d 1243, 1256 (10th Cir. 2007).

he engaged in sexual activity with Arthur. Further, the sexual activity did not occur on school grounds or as part of any school-sponsored activity, Arthur was not Plaintiff's coach or teacher, and there is no evidence suggesting that Arthur exercised any state authority during his communications with Plaintiff or in connection with the sexual activities. Plaintiff's claim is premised on the allegation that Arthur violated Plaintiff's constitutional rights by engaging in physical sexual misconduct. However, the undisputed facts establish that the sexual misconduct was private conduct that did not occur under color of state law.

Plaintiff offers no response to the District's contention that the conduct did not occur under color of state law and instead focuses on the District's policies, customs, or inadequate training regarding claims of sexual abuse and harassment. "But, this argument misses the critical threshold inquiry that a § 1983 claim must be based, first and foremost, on a constitutional violation by a person acting under color of state law." *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1341 (D. Kan. 2008). As the Supreme Court has explained, when a § 1983 claim is asserted against a municipal entity, the "proper analysis" requires consideration of two different issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Plaintiff has totally failed to address the first issue (or, at the least, has not raised a genuine factual dispute sufficient to survive summary judgment). Because Plaintiff has not shown that his alleged harm occurred under color of state law, he has not established an underlying constitutional violation and his municipal liability against the District necessarily fails.

The Fifth Circuit confronted a similar scenario in *Becerra v. Asher*, 105 F.3d 1042,

1048 (5th Cir. 1997), as supplemented on denial of reh'g (Apr. 7, 1997), which involved allegations that a school music teacher sexually abused a former student in the student's home. *Id.* at 1044. The plaintiff brought suit under § 1983 against the teacher, several school district administrators, and the school district, alleging that the teacher was a known threat to his students and the sexual abuse occurred as a result of the school district's deliberate indifference, failure to train and supervise, and inadequate policies. *Id.* at 1044-45. The Fifth Circuit affirmed the grant of summary judgment to the school district because "there was no real nexus between the activity out of which the violation occur[ed] and the teacher's duties and obligations as a teacher." *Id.* at 1047 (internal quotation marks and ellipses omitted). As explained by the Fifth Circuit, this conclusion foreclosed the municipal liability claim:

> Because [the teacher's] physical sexual abuse of [the boy] did not occur under color of state law, there was no state action and no violation of [the boy's] constitutional rights. It necessarily follows that, without an underlying constitutional violation, there can be no § 1983 liability imposed on the school district or the individual supervisors…Without an underlying constitutional violation, an essential element of municipal liability is missing.

*Id.* at 1047-48.

Other courts, including the Tenth Circuit, have similarly concluded that where a teacher's physical sexual abuse of a student does not occur under color of state law and a nexus between the activity out of which the sexual abuse occurred and the school is lacking, the student cannot maintain a claim against the school district under § 1983. *See Cielak v. Nicolet Union High Sch. Dist.,* 112 F.4th 472, 480 (7th Cir. 2024) (holding that the municipal liability claim fails because teacher's sexual abuse of former student after

graduation did not occur under color of state law); *Roe v. Humke*, 128 F.3d 1213, 1218 (8th Cir. 1997) (holding that official capacity claim necessarily fails because police officer that worked with the local school was not acting under color of state law when he sexually abused student); *D.T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee Cnty*, 894 F.2d 1176, 1192 (10th Cir. 1990) (holding that school district could not be liable for teacher's molestation of students during summer months because he was not acting under color of state law and school district's hiring policy was too remote to impose liability); *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1341 (D. Kan. 2008) (granting summary judgment on municipal liability claim because plaintiff had not raised a triable issue of fact as to whether sexual assault by teacher occurred under color of state law).

Consistent with these cases, Plaintiff's § 1983 claim against the District fails because the undisputed material facts show the physical sexual misconduct did not occur under color of state law and there was no nexus between the misconduct and Arthur's obligations as a teacher or coach. Because Plaintiff has not established an underlying constitutional violation, the District is entitled to summary judgment on the claims brought pursuant to § 1983.[6]

The remaining claim is brought under state law and is premised on the District's allegedly negligent implementation of its policies for reporting, investigating, and/or responding to complaints of sexual abuse. The District argues that it is entitled to summary

---

[6] In reaching this conclusion, the Court does not mean to suggest that the actions of Arthur and/or the District were in any way appropriate. Rather, the Court simply concludes that an essential element of Plaintiff's claim is absent.

judgment on this claim because many of the allegedly negligent actions are outside the applicable limitations period, Arthur was not acting in the scope of his employment, and the District's action (or inaction) was not the proximate cause of Plaintiff's harm.

Once again, Plaintiff's brief does not provide any response to these arguments and the arguments have therefore been confessed. *See* LCvR7.1(g); *Hinsdale v. City of Liberal, Kansas*, 19 Fed. Appx. 749, 768–70 (10th Cir. 2001) (affirming district court's presumption that plaintiff abandoned an argument raised in his complaint where plaintiff did not address the argument in his response to defendant's motion for summary judgment); *Bowdish v. Fed. Express Corp.*, 699 F. Supp. 2d 1306, 1326 (W.D. Okla. 2010) (deeming issue confessed where response brief failed to address it). Additionally, assuming that the District negligently responded to prior complaints about Arthur, Plaintiff has not met his burden of identifying specific facts from which a reasonable juror could conclude that the District's negligent response or implementation of its policies was the proximate cause of Plaintiff's harm given that the communications and physical contact between Plaintiff and Arthur did not occur on school grounds, did not relate to any school sponsored activities, and did not involve Arthur's exercise of any authority as a teacher or coach. *See Hartman v. United States,* 923 F. Supp. 2d 1287, 1290 (W.D. Okla. 2013) (explaining that "the defendant's conduct is a cause of the event if the event would not have occurred but for that conduct").

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 19th day of September, 2025.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE